OVERTON, J.
 

 Morgan City is located on the east bank of the Atchafalaya river, or Berwick’s bay, as that part of the river, where the town is located, is known locally. Across the river from where the town is situated is the municipality of Berwick. Both towns are located in the parish of St. Mary, and the state highway, known as the Old Spanish Trail, runs through both of them. For- years past a ferry has been operating between the foot of ■ Freret street in Morgan City and the foot of Canton street in Berwick, serving as a continuation of the public road, leading from the east to the west, or what is now the Old Spanish Trail. The franchise, to operate this ferry, until 1927, was, prior to the incorporation of Berwick, granted by the joint action of Morgan City and the parish of St. Mary; and, after the incorporation of Berwick, by the joint action of that town and the remaining two political subdivisions mentioned. During that period the franchise was sold for a trifle, but since then it has increased considerably in value.
 

 On October 14, 1926, John M. Dalton applied to the council of Morgan City to indorse his application to the police jury of St. Mary parish for a ferry franchise from Morgan City to a point in the parish north of Berwick. The council refused to give this indorsement, and a few days later addressed a protest to the police jury against that body’s granting a franchise to operate a ferry from across the river to Morgan City. Several days following this protest the holder of the ferry franchise between Morgan City and Berwick, which was granted him in 1918, surrendered
 
 *125
 
 his franchise, and, on December 7, 1926, the corporations of Morgan City and Berwick passed resolutions ordering that the franchise be sold at public auction, and shortly thereafter Morgan City adopted an ordinance fixing the public ferry wharf in its corporate limits at the foot of Freret street, and dedicating that point to the exclusive use of the holder of ferry franchises sold by it. The ferry franchise between Morgan City and Ber-wick was advertised for sale, as an exclusive franchise, pursuant to the resolution adopted by those municipalities, and was adjudicated for a period of ten years, for $112,-500, to the Morgan City-Berwick Ferry Company, Inc., and the contract between the two municipalities and the adjudicatee was signed on January 13,1927.
 

 On March 9, 1927, the police jury of St. Mary sold to John M. Dalton, whose application for a franchise from the police jury Morgan City had refused to indorse, a franchise to operate a ferry between the town of Morgan City and a point above the corporate limits of the town of Berwick, and entered into a formal contract with Dalton to that effect on April 7, 1927. On October 18, 1928, Dalton leased from R. J. Terrebonne a tract of land in Morgan City, extending from the west side of Front street west to the bank of the river, for ferry purposes. Dalton apparently did not attempt to operate his franchise, but, on December 3, 1928, conveyed the franchise, together with the lease from Ter-rebonne, to Joseph A. Bisso. Bisso attempted to operate his franchise, but, when his ferryboat landed at Morgan City, the municipal authorities arrested his men.
 

 Following the interference by Morgan City with the operation of the franchise granted by the police jury to Bisso, Bisso instituted the present suit against the mayor and councilmen of Morgan City, and the police jury intervened in his behalf, and the Morgan City-Berwick Ferry Company, Inc., intervened for the purpose of defending Morgan City and ■protecting its franchise. The purpose of the suit is to enjoin Morgan City and certain of its officials from interfering with the operation of Bisso’s franchise, and to declare unconstitutional the ordinance dedicating the foot of Freret street to the exclusive use of the lessees of ferry franchises, sold by Morgan City, and also the ordinance of Morgan City, under which Bisso’s men were arrested, when they landed the ferryboat at the point leased from Terrebonne.
 

 The main, if not practically the only, question, in the final analysis, involved, is whether the police jury of the parish of St. Mary has power to grant a franchise for the operation of a ferry from a point within the parish, but not within a municipal-corporation, to a point in the parish, but within the municipality of Morgan City? The contention of Bisso is that the police jury has such power, while the contention of defendant is that it has no such power.
 

 ■ Section 1501 of the Revised Statutes of 1870, which was incorporated in those statutes from the acts of 1855, No. 302, reads as follows: “The police juries of the several parishes of the state (the parish of Orleans excepted), shall have the exclusive privilege of establishing ferries and toll bridges within their respective limits; of fixing the rates of ferriage and toll to be charged thereon, and of generally regulating the police of the same. This privilege shall not extend to any ferries or bridges already established, until the expiration of their charters; nor to any ferries or bridges within the control of municipal corporations; and said police juries shall have the right to lease the ferries within their respective parishes for any number of years, not to exceed five; and the lessees of
 
 *127
 
 •said ferries shall give bond and security annually, payable to the president of the police jury, in such sum as may be required, for the ■faithful performance of their duties as public ferrymen.”
 

 This section was amended and re-enacted by Act No. 132 of 1906, so as to authorize the leasing of ferries for a period not exceeding ten years, instead of five, and so as to confirm leases already made for the former period. Section 1501 of the Revised Statutes of 1870 is reproduced verbatim in section 2743 of those statutes. This section was amended and re-enacted by Act No. 234 of 1928, though .not until after the franchises here involved were granted, so as to confer the right on municipal corporations, having bridges or ferries within their control, to waive their jurisdiction over them in favor of police juries.
 

 The charter of Morgan City is Act No. 7 of 1876. Section 15 of that act confers on the mayor and city council the entire control of the banks of Bayou Boeuf and Berwick’s bay, ■or the Atchafalaya river, within the boundaries of the municipality, so far as consistent with the laws of the United States, and .section 12 thereof reads as follows, to wit: “That from and after the passage of this act the powers of the police jury of the parish of St. Mary shall cease and determine within said Morgan City, and the mayor and council shall possess all the powers within said corporation which have been heretofore exercised by the police jury, and that the inhabitants and property within the corporate limits of said Morgan City shall be exempt from the payment of all parish taxes.” Section 12 of the act of 1876, just quoted, occurs verbatim in Act No. 102 of 1860, the original charter of Morgan City, by which the municipality was incorporated under the name of Brashear, and appears there as section 6, and thence it was carried, word for woi'd, into Act No. 99 of 1871, the second charter of the town of Bra-shear. Hence the section appears in all,the charters that. Morgan City has had, including the present one, or Act No. 7 of 1876.
 

 When Morgan City was incorporated in I860, as the town of Brashear, Act No. 302 of 1855, the first section of which was later incorporated in the Revised Statutes of 1870 as section 1501, and as the ninth paragraph of section 2743, was in full force and effect It is therefore obvious that, prior to the incorporation of Morgan City as the town of Brashear, the police jury of the parish of St. Mary had exclusive power to establish a' ferry across the Atchafalaya river or Berwick’s bay to or from a point in the territory, later included within the corporate limits of the town. It is equally obvious that, by the act of 1860, the exclusive power to establish a ferry landing within the corporate limits of the town, was taken away from the police jury and vested in the town, for section 6 of Act of 1860, which was carried verbatim into every one of the charters that the town has had, including the present one, provides that the powers of the police jury from and after the passage of the act of incorporation shall cease and determine within the limits of the town, arid that the mayor and council of the municipality shall possess all powers within the corporation which were exercised by the police jury, prior to the passage -of the act of incorporation. As we have said, one of these powers was the exclusive privilege to establish and regulate ferries. It would seem to be clear, therefore, that the exclusive power of the police jury of St. Mary to establish a ferry, leaving and landing at a point in the corporate limits of Morgan City, has long since ceased to exist, and that the privilege of exercising that power is vested in the town of Morgan City.
 

 The case of the Police Jury of New Orleans
 
 *129
 
 v. Mayor, etc., 3 Mart. (O. S.) 710, is not in' conflict with, the views here expressed. That case was decided under laws different from those in force now. In that case the police jury of the parish of New Orleans complained' of haying been disturbed in the enjoyment of the right of causing a public ferry to be kept at a place called the powder house, opposite the City of New Orleans. The defense was that the city was authorized by law to oppose the establishment and landing of a ferry, under the authority of the police jury, within the limits of the city. The city asserted this right under a provision in the acts of 1813, severing it from the rest of the parish, quoad the administration of the police jury, and directing it, within its territorial, limits, to exercise the functions which had been committed to the police jury. The court, in deciding the case, recognized, without discussion, that the language of the act authorized the city to establish ferries, but pointed out that by a. law enacted in 1805 (2 Martin’s Digest, p. 360) provision was made for establishing ferries in the several counties of the territory, and to that effect the county judge was authorized to grant as many licenses as he should in his-discretion think fit. The court also pointed out that at th'e same time the foregoing power was granted, it was provided that, when any water, over which a ferry may be established, divides two counties, the license obtained in either would be sufficient to enable the licensed person to transport persons or goods to or from either side of such water, and that, to protect a person licensed, it was 'further provided that, within one league from the point at which a ferry was established, no other individual should be permitted to transport persons or goods across the water for hire. The court then pointed out that in 1813 a law was passed withdrawing this power from the parish judge, arid vesting it in the police jury, and then adverted to the defense urged by the city, and stated above, relative to the severance of the city from the rest of the parish, quoad the administration of the police jury, and the vesting of the powers of. that body, within the corporate limits, in the city. The court then said that “according to the spirit, and even to the letter of the act of 1805, each parish administration may establish within its limits as many ferries as they please; and the ferrymen thus established have a right to transport goods and persons to and from both sides of the water, whether the opposite side belongs to another parish or not; and that they must also have, of course, the right of a free landing on such opposite shore, needs hardly be noticed.” The court then said that the parish and the city stood in the same relation as two parishes divided by a river, and that each had the same rights, and that each was equally bound not to disturb the other in the exercise of those rights, and decided the case against the city.
 

 As we have said, there is no conflict between that case and the views expressed by us above. The theory of that case is, as the parish and the city stood in the same relation as two parishes divided by a river, that under the law, as it then was, the police jury had the power formerly possessed by the parish judge to license a ferry from a point without the city to a point within it, just as it had to license one running from the boundary line of the parish over which it exercised jurisdiction to the boundary line of an adjoining parish, so that the ferry would have a landing place in both parishes, and that the city, upon its part, by virtue of the powers of the police jury vested in it, had the same right, and that the right of the police jury so to act was not affected by the withdrawal of the city from the jurisdiction of that body, but that
 
 *131
 
 siich withdrawal plated the city-’in- the position’of a-separate and distinct parish as relates to the exercise of the'power.
 

 ‘ The decision is not applicable to-day, in all of its fullness, because of a change in the lAws."’ To-day, when a ferryboat plies between two'parishes, both parishes have concurrent jurisdiction over the ferry. Revised Statutes, §‘1503. If, however, we wére to apply the decision’by analogy to present conditions, and lilsen 'the'relation between Morgan City and the rest'of the parish to'two' parishes divided by a-'ñver, then the police jury of the parish, in order to establish a ferry; as it has attempted to do, between a point, not within the. jurisdiction of any municipal corporation, to- a point within the jurisdiction' of Morgan City, it could do so only concurrently or with the consent'and co-operation of Morgan City, which consent it has failed to get, and which Morgan’ City is probably not in position now to grant,’ without infringing bn the rights of the ferry' that it and Berwick have established.
 

 ’ ’There is nothing in the cases of Hebert v. Maillon, 16 La. 585, and Plaquemine v. Decaudine, 16 La. 588, in conflict with the views expressed by us above, as to the absence of the right in the police jury of St. Mary, to grant, of its own motion, a franchise to operate a ferry into Morgan City. The first of these cases involved the interpretation and application of the same laws, with the exception of the charter provisions, as did the case of Police Jury v. Mayor, etc., just reviewed. The court there found that the municipality that granted the license had no power to license ferries. The court, however, After assuming that the municipality had such power, found, by reasoning the same as that adopted in Police Jury v. Mayor, etc., supra, that the franchise granted by the police jury was valid. To that extent, what we have said in reviewing the ease of Police Jury v; Mayor, etc., is pertinent here. The second of these cases was decided upon the point that the municipality was without authority -to sell the ferry franchise, adjudicated by it — a power which' we have found- Morgan City had.
 

 The ease of Police Jury of Lafourche v. Robichaux, 116 La. 286, 40 So. 705, does not support plaintiff’s contention that the police jury of St. Mary has the right to establish a ferry from a point outside the limits of a municipal corporation to a point within Morgan City, without reference to the consent of the latter. That was a case in which -the police jury applied for an injunction to enjoin Robichaux and others from maintaining and operating a free pontoon bridge within one-third of a mile of a toll bridge, owned and operated jointly by the police jury and the town of'Thibodaux, and constructed from the town to a point across Bayou Lafourche. The defense was a denial that the police jury had the right to levy and collect tolls on the bridge, located within- the territorial limits of the town, or that it had any authority over bridges or ferries, crossing the bayou, within the limits of the town. The bridge, owned and operated by the police jury and the town, was constructed under a special act of the Legislature, authorizing those two political corporations to construct it, or to grant to the person or corporation constructing it the exclusive right and privilege to collect toll, as the grantors might allow, for a certain period. The bridge was constructed by a bridge company and operated by it for some years, when it was finally, though at the end of a lawsuit, abandoned to the police jury and the town. The decision of the case chiefly turned on the special act under which the bridge was constructed. In our view, the case has no particular pertinence here.
 

 Our conclusion is that the police jury
 
 *133
 
 of St. Mary has no power to grant a franchise for a ferry, leaving or landing at Morgan City, without the consent of that town, and therefore that Bisso has no valid franchise to enforce or protect. We are also of the opinion that there is no merit in the constitutional questions raised by Bisso. These questions relate to Bisso’s being deprived of his property without due process of law, to his being deprived of the rights guaranteed him as riparian owner of property (referring to the lease of the ferry landing acquired by him), under section 30 of article 14 of the Constitution of the state, 1921, to violating the obligation of contracts, and to his being unjustly discriminated against.
 

 As relates to the constitutionality and validity of the ordinance under which Bisso’s men were arrested, as he has no valid franchise to protect, his property rights have not been invaded, and he is not entitled to an injunction to prevent further arrests. The validity or invalidity of that ordinance cannot affect the result here. It will be time enough to consider the validity of the ordinance, when the case against these men is presented to us. We understand that it is now lodged in this court.
 

 The trial judge rendered judgment, refusing to issue the injunction, and dismissing the demand of Bisso and the police jury.
 

 The judgment is affirmed.