146 So. 470

## LOUISIANA SOUTHERN RY. CO. v. BOARD OF LEVEE COM'RS OF ORLEANS LEVEE DIST.

No. 31951.

Jan. 30, 1933.

Rehearing Denied Feb. 27, 1933.

Bond, Curtis, Hall & Foster, of New Orleans, for appellant.

James Wilkinson, N. H..Polmer, and George Piazza, all of New Orleans, for appellee.

ROGERS, Justice.

This suit grows out of what is locally known as the "Caernarvon Crevasse," which was artifically created under executive orders below the city of New Orleans on April 29, 1927. The suit is founded on the provisions of the constitutional amendment embodied in Act No. 2 of the Extra Session of 1927, and was originally brought to recover $489,752.34

for property damage and loss of revenues and anticipated profits alleged to have been suffered by plaintiff as a result of the crevasse.

Plaintiff's claims were listed under Schedules A and G on forms prepared by the Reparations Commission, which was created to handle the claims arising out of the crevasse. The items listed under Schedule A covered the alleged property damage suffered by plaintiff and amounted to $140,044.34, and the items listed under Schedule G covered the alleged loss of revenues and profits suffered by plaintiff and amounted to $349,709.

The items in Schedule G were listed in three separate groups, and exceptions of no right and no cause of action were filed by defendant to each item set forth in the three groups. The exceptions were sustained by the district court, and plaintiff's appeal to this court was dismissed on the ground that the judgment was not a final judgment, since it did not dispose of all the issues involved in the case. See La. Southern Ry. Co. v. Board of Levee Com'rs, 169 La. 475, 125 So. 453.

Subsequently, plaintiff's claim for its property damage was amicably settled between the parties, and plaintiff, having abandoned its claims for loss of revenues and profits, except its claim for $28,309 listed under Group A of Schedule G, those claims were dismissed. The court below recalled the interlocutory judgment which it had previously rendered maintaining defendant's exceptions of no right or cause of action and permitted a reargument of the exception leveled at the claim of $28,309 listed under Group A of Schedule G. After hearing the reargument, the court below again sustained the exception, and plaintiff has appealed from the judgment.

The present appeal only involves plaintiff's claim for $28,309 as set forth in Group A of Schedule G. The claim is listed and made up as follows, viz. :

"Group 'A' shows losses actually sustained as a result of our not having been able to operate below Violet Canal from April 29th. until the reconstruction of the line. The annual gross earnings from that section during the same period in the years 1924, 1925 and 1926 was $65,000.00.

"The additional expenses which would have been necessary had we been able to operate over that portion of the line would have amounted to $36,691.00.

"We, therefore, claim a loss of net revenue from industries actually in operation of $28,309.00."

Plaintiff argues that it is entitled to the rental value of its railroad during the period its tracks were covered with water. No such claim is set up in its pleadings. The claim with which we are presently concerned is one for recovery of the profits of which plaintiff has been deprived.

Plaintiff argues that if the case is remanded it will be able to prove that one of the industrial plants to which it was denied access by the crevasse was in active operation during the whole period of the inundation, but its products were shipped by water instead of by plaintiff's railroad as was the case before the crevasse. That proof can be made of the quantities of goods produced by the plant and of the net profit on the freight the plaintiff would have earned if the shipments had been made by its railroad.

But plaintiff does not allege the quantity of goods that were produced by the factory in

question which would have been shipped over its railroad during the period of inundation, the freight revenues it would have received, the transportation charges it would have incurred, and the net profit it would have earned. Non constat, that the operators of the factory, for reasons of economy or convenience, may not have shipped the products of the factory wholly or partly by motor vehicles instead of entirely by plaintiff's railroad. Plaintiff cannot prove what it has not alleged.

█ Plaintiff's claim under its pleadings is based on its alleged entire loss of profits as a result of its not being able to operate below the Violet Canal from April 29, 1927, until the reconstruction of its railroad line, and it computes its alleged loss entirely on its average earnings and expenses during the same period for the three preceding years.

The case presented by plaintiff is clearly within the rulings in Foret v. Board of Levee Commissioners, 169 La. 427, 125 So. 437; Alfred Oliver & Co. v. Board of Commissioners, 169 La. 438, 125 So. 441; and Fabre v. Board of Commissioners, 170 La. 210, 127 So. 603.

In our opinion, there is no more reason for allowing plaintiff a recovery for the loss of profits claimed in this case than there was for allowing Foret to recover the amount of salary of which he was deprived, for allowing Oliver & Co. to recover for the loss of profits from their fishing operations and for allowing Fabre and his partner to recover for the loss of profits of the commercial business in which they were engaged.

The story of the Caernarvon Crevasse and the history and purpose of the legislation under which it was created are fully set forth in

our opinion in the Foret Case. As we show in that case, the act of creating the crevasse was the act of the state, through its Governor, exercising its police power.

█ The state directly or through its agencies has the right of determining the propriety, location, and mode of building levees, and whatever damages are caused to others in the exercise of this right are damna absque injuria. If it were not for the liability voluntarily assumed for the Orleans levee district by the Legislature and people of the state when they passed and adopted the constitutional amendment, there would be no responsibility whatever resting upon the state or any of its agencies for the cutting of the levee at Caernarvon in the interest of the public welfare.

█ The liability of the Orleans levee district for losses occasioned by the artificial break in the levee at Caernarvon results solely from the constitutional amendment adopted in April 1928, pursuant to Act No. 2 of the Extra Session of 1927. The right of action granted therein against the defendant, so far as it is pertinent, reads: "That the Board of Levee Commissioners of the Orleans Levee District be and it is hereby authorized and directed, out of the funds hereinafter provided for, to pay (a) just compensation for losses sustained by individuals, firms or corporations within the affected area as the result of the encroachment of said waters." Section 1. In interpreting this constitutional provision in the Foret Case, we said, at pages 437 and 438 of the opinion in 169 La., 125 So. 437, 441, that: "In using these words, the constitutional amendment conveys the idea that just compensation is directed to be paid for damages

to what is encroached on by the waters, that is, physical property. This, it may be observed, is in accordance with the Governor's proclamation, in declaring that 'the damage to property resulting from this act will be paid.' The constitutional amendment does not include within its terms such consequential damages as those occasioned by the temporary discontinuance of one's salary, due to the fact that the corporation, paying the salary, had to discontinue business temporarily on account of the flood." And the rule announced in the Foret Case was approved and applied in the Oliver and Fabre Cases.

We find no warrant to depart from these three decisions at this late date. They have served as authority for the decisions in similar cases by the Court of Appeals for the Parish of Orleans and as a guide for the extrajudicial settlement of numerous claims against the defendant levee board. Besides, we think they are fundamentally sound. The constitutional amendment plainly indicates that under its terms compensation is to be paid only for damages to physical property. Mere consequential injuries to individuals, firms, and corporations within the affected area arising from discomfort, injury to business, and the like, remain, as they were before the adoption of the constitutional amendment, damna absque injuria, a particular sacrifice which society has the right to exact for the public welfare.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., dissents, being of the opinion that the loss claimed is not like that which was claimed in Foret's Case, or Oliver's Case, or Fabre's Case.